IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| ROSS FRATZKE and DEBORA FRATZKE, <br><br> Plaintiffs, <br><br> vs. <br><br> SANDERS COUNTY; SANDERS COUNTY SHERIFF'S OFFICE; MONTANA FISH, WILDLIFE AND PARKS; SANDERS COUNTY DEPUTY MARTIN SPRING; GAME WARDEN THOMAS CHIANELLI; BARBARA HARRIS; SANDERS COUNTY ATTORNEY'S OFFICE; BRYON MILLER; and DOES 1-25. <br><br> Defendants. | CV 14–274–M–DLC <br><br><br> ORDER |

Before the Court is the motion for summary judgment filed by Defendants

Montana Fish, Wildlife & Parks ("MTFWP"), Game Warden Thomas Chianelli

("Chianelli"), and Barbara Harris ("Harris") (collectively, "State Defendants").

For the reasons explained below, the Court grants the motion.

**BACKGROUND**

This case arises from the prosecution of Plaintiffs Ross and Debora Fratzke

("the Fratzkes") in the Montana Twentieth Judicial District Court on charges of

theft by insurance fraud, in violation of Montana Code Annotated § 45-6-301(6), and unlawful possession, shipping, or transportation of game animals, in violation of § 87-3-111. Ultimately, the Fratzkes were not convicted on any of these charges, and now bring this action against Defendants for their various roles in the prosecutions. The Fratzkes' claims include defamation, state law malicious prosecution, malicious prosecution as a violation of 42 U.S.C. § 1983, abuse of process, intentional infliction of emotional distress, and deprivation of their right to privacy under the Montana Constitution.

State Defendants removed the case on November 24, 2014, invoking this Court's federal question jurisdiction over the 42 U.S.C. § 1983 claim and its supplemental jurisdiction, pursuant to 28 U.S.C. § 1441(c), over the remaining claims. State Defendants filed the instant motion for summary judgment the following day. The Court then denied the Fratzkes' motion to remand the case to state court on February 24, 2015, and denied their motion for relief pursuant to Rule 56(d) of the Federal Rules of Civil Procedure on April 6, 2015. The Court also stayed discovery as it relates to State Defendants in its order on the Rule 56(d) motion. The Fratzkes filed their response to the motion for summary judgment on May 13, 2015, and State Defendants filed their reply briefs on June 26, 2015.

## LEGAL STANDARD

A party is entitled to summary judgment if it can demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is warranted where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251 (1986). Only disputes over facts that might affect the outcome of the lawsuit will preclude entry of summary judgment; factual disputes that are irrelevant or unnecessary to the outcome are not considered. *Id.* at 248. In ruling on a motion for summary judgment, a court must view the evidence "in the light most favorable to the opposing part." *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). "[T]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 1863 (quoting *Anderson*, 477 U.S. at 255).

## ANALYSIS

A federal court sitting in diversity applies the substantive law of the forum state to state law claims. *Mason & Dixon Intermodal, Inc. v. Lapmaster Intern. LLC*, 632 F.3d 1056, 1060 (9th Cir. 2011). Thus, the Court analyzes State Defendants' motion for summary judgment on the Fratzkes' state law claims

pursuant to Montana law.

At the outset, the Fratzkes agree that certain claims in their First Amended Complaint are either not alleged against State Defendants, or are only properly alleged against MTFWP, Chianelli, or Harris specifically. The Fratzkes agree that Defendant Bryon Miller ("Miller") is the only defendant subject to Count 1. They further agree that MTFWP is the only proper defendant for the allegations made in Counts 2 (state law malicious prosecution), 5 (Montana constitutional claims), and 6 (intentional infliction of emotional distress). *See* Mont. Code Ann. § 2-9-305(5) ("In an action against a governmental entity, the employee whose conduct gave rise to the suit is immune from liability . . . if the governmental entity acknowledges . . . that the conduct upon which the claim is brought arises out of the course and scope of the employee's employment."). The Fratzkes agree that Count 3, their § 1983 claim, is properly alleged against Chianelli and Harris only. Finally, they agree that Count 4, their abuse of process claim, should be dismissed relative to State Defendants. Thus, Chianelli and Harris are potentially liable only on Count 3, and MTFWP is potentially liable only on Counts 2, 5, and 6.

The Court begins with the claims against Chianelli and Harris, ends with the claims against MTFWP, and grants summary judgment in State Defendants' favor on all applicable counts.

**I.     The Fraztkes' § 1983 claim against Chianelli.**

Chianelli moves for summary judgment on the Fraztkes' § 1983 malicious prosecution claim on qualified immunity grounds.  To that end, he contends primarily that he did not intend to deprive the Fratzkes of a constitutional right.  Chianelli also advances a number of merits arguments, including that he did not pressure Harris to prosecute the Fratzkes, did not instigate the prosecution, and that, nevertheless, there was probable cause for the prosecution.  The Fratzkes respond that Chianelli cannot escape liability by, in essence, hiding behind prosecutorial decisions of Harris, and further that there simply was no probable cause to investigate or prosecute them.  The Court finds Chianelli's instigation argument most compelling, and so grants summary judgment in his favor on that basis.

In order to present a cognizable claim of malicious prosecution under § 1983, a plaintiff must plead tortious conduct by the defendant under the elements of a state law malicious prosecution claim, as well as allege that the defendants acted under color of state law and for the purpose of denying the plaintiff a specific constitutional right.  *Poppell v. City of San Diego*, 149 F.3d 951, 961 (9th Cir. 1998); *see also Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004) ("In order to prevail on a § 1983 claim of malicious prosecution, a plaintiff

must show that the defendants prosecuted [him] with malice and without probable cause, and that they did so for the purpose of denying [him] equal protection or another specific constitutional right"); *Usher v. City of Los Angeles*, 828 F.2d 556, 562 (9th Cir. 1987) ("the general rule is that a claim of malicious prosecution is not cognizable under 42 U.S.C. § 1983 if process is available within the state judicial system to provide a remedy," but "an exception exists to the general rule when a malicious prosecution is conducted with the intent to deprive a person of equal protection of the laws or is otherwise intended to subject a person to a denial of constitutional rights.").

In a malicious prosecution action in Montana, "the plaintiff bears the burden of proving that (1) a judicial proceeding was commenced against the plaintiff; (2) the defendant was responsible for instigating, prosecuting, or continuing a judicial proceeding; (3) there was a lack of probable cause for the defendant's acts; (4) the defendant was actuated by malice; (5) the judicial proceeding terminated favorably for the plaintiff; and (6) the plaintiff suffered damage." *Spoja v. White*, 317 P.3d 153, 156 (Mont. 2014) (citations and internal quotation marks omitted). "Malicious prosecution claims are not favored by the law and the burden on the plaintiff is heavy." *White v. State ex rel. Mont. State Fund*, 305 P.3d 795, 803 (Mont. 2013) (citations omitted). "When a defendant acts upon a statutory duty

and provides information to the proper authorities, who then file criminal charges, that defendant is not liable for 'instigating' criminal proceedings." *White*, 305 P.3d at 804 (citing *Vehrs v. Piquette*, 684 P.2d 576, 478 (Mont. 1984) ("providing information to authorities without more" does not satisfy the instigation element in a malicious prosecution claim)).

Chianelli is entitled to summary judgment on the Fratzkes' § 1983 claim because the record makes clear that he simply investigated the reported game violations which Harris ultimately chose to prosecute, nothing more. Chianelli's April 6, 2010 affidavit of probable cause and application for a warrant to search the Fratzkes' residence and guest lodge provides a detailed account of the circumstances by which Chianelli came to investigate the Fratzkes, as well as the information he received and actions he took during the investigation. Defendant Deputy Martin Spring ("Spring") contacted Chianelli in January 2010 and put him in touch with Miller, who was employed as a hunting guide at the Fratzkes' outfitting business. Miller provided extensive details regarding what Chianelli determined were likely fish and game violations committed by the Fratzkes. Chianelli had a duty under Montana law to investigate the Fratzkes, and he did so. *See* Mont. Code Ann. §§ 87-1-502, -506. He compiled a file and passed it along to the Sanders County Attorney's Office, which then sent the information to Harris

with its request for prosecutorial assistance. Harris received Chianelli's file in January 2011, nearly a year after Chianelli applied for and served the search warrant for the Fratzke residence. Harris affirmed that she did nothing more than review Chianelli's file before making the decision to proceed with prosecuting the Fratzkes – she states that she neither investigated the Fratzkes nor advised Chianelli in his investigation. (Doc. 4-1 at 2-4.) In short, Chianelli appears not to have had any contact with Harris regarding the prosecution, and thus cannot be said to have instigated it.

The Fratzkes inappropriately rely on two sources in opposition to this conclusion. First, they cite *Hill v. Burlingame*, 797 P.2d 925, 926-927 (Mont. 1990), for the odd proposition that a game warden's only defense to the instigation element of a malicious prosecution claim is advice of counsel. Because Chianelli does not address this defense, the Fratzkes claim that the instigation elements cuts in their favor and summary judgment should be denied. However, it is understandable that Chianelli neglects to make an advice of counsel argument because *Hill* cannot reasonably be read as the Fratzkes suggest. Rather, the Montana Supreme Court in *Hill* simply construed the defendant game warden's prosecutorial immunity defense as an advice of counsel defense, and found that the defendant's presentation of the defense was insufficient to warrant a jury

instruction.  *Hill*, 797 P.2d at 927.

Second, the Fratzkes cite the declaration of their law enforcement practice and procedure expert, William J. Buzzell, Jr. ("Buzzell").  Buzzell spends sixteen pages opining on Chianelli's investigatory faults, ultimately concluding that Chianelli's decision to pursue the Fratzkes was unreasonable, in light of the what Buzzell believes were Miller's clear "vindictive motives" for acting as an informant.  (Doc. 50-5 at 14.)  Apart from the reliability of Buzzell's opinions or the fact that he inappropriately evaluates Chianelli's actions in the vacuum of hindsight, Buzzell in no way addresses the instigation element of a malicious prosecution claim, instead focusing on the lack of probable cause element.  As explained above, Chianelli's lack of instigation ends the analysis before reaching the third element.  Buzzell's opinion fails to close the gap in the Fratzkes' case against Chianelli.

Based on the foregoing, the Court finds that Chianelli did not instigate the Fratzkes' prosecution and is entitled to summary judgment on Count 3 of the Fratzkes' First Amended Complaint.

## II.    The Fraztkes' § 1983 claim against Harris.

Harris moves for summary judgment on the Fratzkes' § 1983 malicious prosecution claim on absolute immunity grounds, claiming that all of her actions

in the criminal matter at the core of this case "fell within the traditional role of the prosecutor." (Doc. 6 at 5.) The Fratzkes contend otherwise, alleging that Harris' act of swearing under oath to the existence of probable cause to prosecute them was akin to her serving as a fact witness. The Fratzkes' argument is without merit, and Harris is entitled to summary judgment on the basis of absolute prosecutorial immunity.

"[C]riminal prosecutors may claim absolute immunity from damages liability for actions 'intimately associated with the judicial phase of the criminal process,' such as the prosecutor's initiation of a prosecution and presentation of the state's case." *Torres v. Goddard*, No. 12-17096, ___ F.3d ___, 2015 WL 4282721, at * 3 (9th Cir. July 16, 2015) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)). However, "[b]ecause absolute prosecutorial immunity stems from 'the interest in protecting the proper functioning of the office, rather than the interest in protecting its occupant,' the touchstone is 'the nature of the function performed, not the identity of the actor who performed it.'" *Id*. (quoting *Kalina v. Fletcher*, 522 U.S. 118, 125, 127 (1997)). Thus, where a prosecutor acts in an administrative or investigative role, *Buckley v. Fitzsimmons*, 509 U.S. 259, 272-274 (1993), or as a complaining witness, *Kalina*, 522 U.S. at 129-131, her actions fall outside the scope of the judicial phase of a prosecution, and thus outside the

protection of absolute immunity.

The Fratzkes rely exclusively on *Kalina* to defeat Harris' absolute immunity defense. In *Kalina*, a Washington state prosecutor commenced a criminal action by filing an information, a motion for an arrest warrant, and a "Certification for Determination of Probable Cause." 522 U.S. at 121. The latter document explained the evidence supporting the charge, and the prosecutor "personally vouched for the truth of the facts set forth in the certification under penalty of perjury." *Id*. Washington law required that an arrest warrant be supported by an affidavit or sworn testimony; the prosecutor intended to meet this requirement with the certification. *Id*. However, the certification contained two material factual inaccuracies. *Id*. The prosecutor subsequently dropped the criminal charges, and the defendant brought a § 1983 suit against her thereafter. *Id*. at 122. The prosecutor then moved for summary judgment on absolute immunity grounds, but the district court denied the motion. *Id*. The Ninth Circuit affirmed, holding that the prosecutor's act of obtaining the arrest warrant, essentially without probable cause, was not protected by absolute immunity. *Kalina*, 522 U.S. at 122.

On review of the Ninth Circuit's decision, the United States Supreme Court affirmed, noting that because the prosecutor personally testified as to the facts in the certification, she took on the role of a witness and was not protected by

absolute prosecutorial immunity. *Id*. at 130. However, the Court was careful to

distinguish the unique act of personally vouching for the truth of the evidence in

the certification from the other, more typical acts in which the prosecutor engaged:

> [The prosecutor characterized the certification as] just
> one incident in a presentation that, viewed as a whole,
> was the work of an advocate and was integral to the
> initiation of the prosecution. That characterization is
> appropriate for her drafting of the certification, her
> determination that the evidence was sufficiently strong to
> justify a probable-cause finding, her decision to file
> charges, and her presentation of the information and the
> motion to the court. Each of those matters involved the
> exercise of professional judgment; indeed, even the
> selection of the particular facts to include in the
> certification to provide the evidentiary support for the
> finding of probable cause required the exercise of the
> judgment of the advocate. But that judgment could not
> affect the truth or falsity of the factual statements
> themselves.

*Id*. The Court further noted that the prosecutor's personal attestation, apparently

commonplace in the King County, Washington prosecutor's office, was atypical

compared to similar offices around the country and not required by any state or

federal law. *Id*.

In this case, Harris' motion for leave to file the information against the

Fratzkes does not contain the sort of personal vouching found in the certification

in *Kalina*, and therefore does not strip Harris of absolute immunity. In the motion,

Harris states, "based on information and belief, that investigative information developed and provided to her . . . demonstrates probable cause to believe that [the Fratzkes] committed the offenses charged."  (Doc. 4-2 at 1-2).  She then lists the information provided to her that she believes supports a probable cause finding – at no point does she personally attest to the truth of the information provided, but instead indicates that, taken as true, the information constitutes probable cause to file the charging document.  Harris did not offer the probable cause evidence in the motion based on personal knowledge, but based upon information provided to her by others, which she is entitled to do.  She did not act as a complaining witness, but instead performed a function which the *Kalina* Court noted would continue to receive absolute immunity protection – she received, selected, and presented externally-gathered information which she believed provided probable cause to charge the Fratzkes.  As this falls squarely within the "the judicial phase of the criminal process," *Torres*, ___ F.3d at ___, 2015 WL 4282721, at * 3, Harris enjoys absolute prosecutorial immunity from the Fratzkes' § 1983 claim, and is entitled to summary judgment on Count 3 of the First Amended Complaint.

## III.    The Fratzkes' state law claims against MTFWP.

MTFWP moves for summary judgment on the Fratzkes' state law malicious prosecution (Count 2), constitutional tort (Count 5), and intentional infliction of

emotional distress (Count 6) claims.  MTFWP's liability for malicious prosecution is coterminous with Chianelli's, given that Chianelli is the only individual through which the agency acted during the investigation into the Fratzkes, and the only one of its employees to be named in this matter.  As explained above, Chianelli is not liable for malicious prosecution based on the second element of such a claim under Montana law.  Thus, MTFWP cannot be held liable for malicious prosecution, and the Court grants its motion for summary judgment on Count 2 of the Fratzkes' First Amended Complaint.  The Court turns to the Fratzkes' remaining two claims.

### A.    Montana constitutional claims.

MTFWP moves for summary judgment on Count 5 of the Fratzkes' First Amended Complaint, which alleges that, through Chianelli's actions, the agency violated: (1) their rights to individual privacy, pursuant to Article II, § 10 of the Montana Constitution, (2) their rights to be free from unreasonable searches and seizures, pursuant to Article II, § 11, and (3) their due process rights, pursuant to Article II, § 17.  MTFWP contends it is entitled to summary judgment on the entirety of the First Amended Complaint, including these claims, based upon the existence of probable cause for Chianelli to conduct his investigation and search the Fratzkes' property.  As to the Montana constitutional claims specifically,

MTFWP contends it is entitled to summary judgment because adequate remedies exist under state law for the Fratzkes' alleged injuries, and because the statute of limitations has run on these claims. The Fratzkes claim the opposite as to probable cause, and point to the fact that the state court judge granted their post-trial motion to dismiss the insurance fraud charge as evidence that "there was never any probable cause to believe a crime had been committed in the first place." (Doc. 51 at 15.) The Fratzkes do not address the first of MTFWP's alternative arguments, but as to the second contend that the statute of limitations for constitutional torts should be the same as that for tort injuries, three years. The Court need not consider MTFWP's remedies or statute of limitations arguments on the Montana constitutional claims because the record reflects that there was probable cause for Chianelli's investigation of the Fratzkes, and because the Fratzkes received adequate procedural due process by virtue of their state court trial.

Sections 10 and 11 of Article II of the Montana Constitution embrace probable cause as the primary protection against their violation. *See State v. Giacomini*, 327 P.3d 1054. 1058-1059 (Mont. 2014) ("A compelling state interest [in invading an individual's right to privacy under § 10] can be found where the State enforces its criminal laws to protect other fundamental rights of its citizens.

Even so, the State may not invade an individual's privacy unless the procedural safeguards attached to the right to be free from unreasonable searches and seizures are met.") (citations omitted); *State v. Goetz*, 191 P.3d 489, 498 (Mont. 2008) ("the reasonableness of [a] search or seizure under the circumstances . . . [depends upon] whether the state action complained of violated the Article II, Section . . . 11 protections because it was not justified by a compelling state interest or was undertaken without procedural safeguards such as a properly issued search warrant or other special circumstances") (citations omitted).

Montana follows "the 'totality of the circumstances' test . . . to evaluate whether probable cause supported the issuance of a warrant." *State v. Barnaby*, 142 P.3d 809, 816 (Mont. 2006) (citations omitted). "Under the totality of the circumstances test, the issuing judicial officer must make a practical, common sense determination, given all the evidence contained in the application for a search warrant, whether a fair probability exists that contraband or evidence of a crime will be found in a particular place." *Id*. (citations omitted). "A determination of probable cause does not require facts sufficient to make a showing of criminal activity, rather, the issuing judicial officer must only determine that there exists a probability of criminal activity." *Id*. (citations omitted). "[P]ersonal observation of criminal activity by an informant whose

reliability can be established provides probable cause." *State v. Harlow*, 228 P.3d 446, 448 (Mont. 2010) (citations omitted).

Procedural due process, as guaranteed by § 17 of Article II of the Montana Constitution, "is required if a party makes a showing that a property or liberty interest exists." *State v. Samples*, 198 P.3d 803, 807 (Mont. 2008) (citations omitted). "If there is a property or liberty interest at stake, procedural due process requires that a person must be given an opportunity to explain, argue and rebut any information that may lead to a deprivation of life, liberty, or property." *Id*. at 807-808 (citations and internal quotation marks omitted). "The fundamental requisite of due process of law is the opportunity to be heard." *State v. Niederklopfer*, 6 P.3d 448, 450 (Mont. 2000) (citations omitted), *overruled on other grounds by Whitlow v. State*, 183 P.3d 861 (Mont 2008).

There is no question that Chianelli's actions in the state criminal case fail to give rise to a violation of the Fratzkes' due process rights – Chianelli did not instigate the prosecution that brought them into court, but even if he did, the Fratzkes were afforded a complete criminal trial and were ultimately acquitted of all charges. The Fratzkes received all due constitutional process contemplated in *Samples* and *Niederflopfer*, and indeed the process worked in their favor.

Furthermore, as mentioned above, because Chianelli is the sole MTFWP

employee named in this matter, only his actions in the state criminal case have any bearing on MTFWP's liability for the Fratzkes' privacy claim and search and seizure claim. Thus, MTFWP's liability for these claims hinges on whether Chianelli's application for the warrant to search the Fratzkes' residence and guest lodge was supported by probable cause. The record makes clear that it was.

Chianelli's warrant application relied heavily on Miller's accounts of poaching and illegal harvesting in and around the Fratzkes' property in Thompson Falls, Montana. At the outset, Chianelli identified Miller as an individual he is familiar with from Miller's work as a licensed hunting guide, and noted that Miller worked for the Fratzkes in this capacity. Chianelli then relayed Miller's recollections of the Fratzkes' illegal hunting activities, including: (1) Ross Fratzke telling Miller he planned to give a friend visiting from out of state an elk tag issued in Fratzke's name, (2) Miller witnessing the out of state friend with the elk the friend had killed with the illegal tag, (3) Ross Fratzke asking Miller to keep watch for approaching vehicles while Fratzke and another friend removed an illegally-taken cow elk from property near the Fratzkes' land, (4) Ross Fratzke illegally trapping a bobcat after the close of the bobcat season, and (5) Ross Fratzke placing an antelope tag issued in his name on an antelope killed by his son. (Doc. 59-1 passim.) Chianelli further included information from Miller

regarding where in the Fratzkes' residence and guest lodge evidence of the alleged illegal activities would likely be located. Pursuant to *Barnaby* and *Harlow*, there was at least a fair probability that evidence of the game violations would be found at the Fratzkes' property, based on Miller's firsthand observations. The warrant application therefore establishes probable cause to search the property based on the totality of the circumstances.

The Fratzkes' contention regarding the effect of their post-trial motion to dismiss is unavailing. Chianelli's investigation into the Fratzkes served as the foundation for the State's prosecution of Counts II and III of the Information – the game violations. Chianelli had nothing to do with the State's prosecution of the insurance fraud charge, Count I. At the close of the State's case in chief, the Fratzkes' defense counsel moved to dismiss Counts II and III "on the basis that the State had failed to present sufficient evidence for the case to continue." (Doc. 57-1 at 2.) The state court dismissed the game violation counts, but appears not to have made a finding that probable cause never existed to bring those charges. On the contrary, the state court denied the Fratzkes' pre-trial motions to dismiss Counts II and III and to suppress the evidence seized from their home, confirming that the court granted the motion to dismiss these counts during trial on the basis of sufficiency of the evidence. In short, nothing about the granting of the

Fratzkes' post-trial motion on Count I erodes the probable cause supporting Chianelli's application for a search warrant and collection of evidence bolstering Counts II and III.

Based on the foregoing, the Court finds that MTFWP is entitled to judgment as a matter of law on the Fratzkes' Montana constitutional claims, and grants summary judgment in its favor on Count 5 accordingly.

## B.    Intentional infliction of emotional distress claim.

Finally, MTFWP moves for summary judgment on Count 6 of the Fratzkes' First Amended Complaint, which alleges intentional infliction of emotional distress ("IIED").  MTFWP contends that the Fratzkes have no evidence that the emotional distress suffered by Ross Fratzke is severe, as defined by Montana case law, and that the IIED claim is barred by the public duty doctrine regardless.  The Fratzkes point to Ross Fratzke's declaration that he suffers from post-traumatic stress disorder ("PTSD") as prima facie evidence of the severity of the distress. The Court finds that Ross Fratzke's alleged PTSD was an unforeseeable consequence, agrees with MTFWP as to the sufficiency of the evidence regarding severity, and grants summary judgment in MTFWP's favor on the IIED claim.

Under Montana law, "an independent cause of action for intentional infliction of emotional distress will arise under circumstances where serious or

severe emotional distress to the plaintiff was the reasonably foreseeable consequence of the defendant's intentional act or omission." *Sacco v. High Country Indep. Press, Inc.*, 896 P.2d 411, 428 (Mont. 1995). "[D]amages for emotional distress are compensatory and, therefore, the focus should be on the reasonable foreseeability that plaintiff's serious or severe emotional distress was the consequence of the defendant's act or omission." *Id*. "The distress must be reasonable and justified under the circumstances, and there is no liability where the plaintiff has suffered exaggerated and unreasonable emotional distress, unless it results from a peculiar susceptibility to such distress of which the [defendant] had knowledge." *Id*. at 426 (citations omitted). "It is for the [C]ourt to determine whether on the evidence severe serious emotional distress can be found; it is for the jury to determine whether, on the evidence, it has in fact existed." *Feller v. First Interstate Bancsystem, Inc.*, 299 P.3d 338, 346 (Mont. 2013). The Montana Supreme Court has declined "to hold that a criminal trial, standing alone, causes emotional distress 'so severe that no reasonable person could be expected to endure it.'" *White*, 305 P.3d at 806 (citing *Sacco*, 896 P.2d at 423).

The Fratzkes' IIED claim fails because Ross Fratzke's alleged PTSD was not a reasonably foreseeable consequence of Chianelli's appropriately-performed investigation into the suspected game violations, and because the Fratzkes have

not marshaled evidence of the PTSD sufficient to defeat summary judgment. Chianelli received information from the Sanders County Sheriff's Office regarding the alleged game violations, performed his own investigation into the Fratzkes' activities, then applied for, received, and executed a search warrant supported by probable cause. He compiled an investigatory file which eventually made it to Harris, who made the decision to prosecute the Fratzkes for the game violations. Chianelli did nothing more than perform his job, and it is absolutely unforeseeable that Ross Fratzke's PTSD could flow from him doing so. Finding otherwise could hamstring the efforts of game wardens, police officers, and anyone else whose duty necessarily entails looking into the lives and activities of others.

Likewise the Court concludes that, on the evidence, severe emotional distress cannot be found in this case. *Feller*, 299 P.3d at 346. First, Ross Fratzke's alleged PTSD is unreasonable and unjustified under the circumstances – the Fratzkes own and operate a hunting lodge and outfitting service, and it is highly foreseeable that, from time to time, they would interface with MTFWP personnel and perhaps even be investigated or audited in some fashion. *See e.g.* Mont. Code Ann. §§ 37-47-301 et seq.; Mont. Admin. R. 24.171.2301 (2015). Second, Ross Fratzke's personal assurances and characterizations of his psychological state are insufficient to support the contention that his emotional

distress is serious and severe.  He claims that he suffers from PTSD as a result of the criminal prosecution, but does not provide an affidavit or report of his treatment provider to that effect.  He also claims to have received Social Security Disability benefits as a result of the alleged PTSD, but does not provide any evidence of the Social Security Administration's determination.  Ultimately, the Fratzkes do not present any evidence of the causal link between Chianelli's investigation into the game violations and Ross Fratzke's alleged PTSD, other than Ross Fratzke's own self-serving, conclusory, hearsay statements.  Such evidence does not satisfy the Fratzkes' evidentiary burden on summary judgment.

Based on the foregoing the Court grants MTFWP's motion for summary judgment on Count 6 of the Fratzkes' First Amended Complaint.

Accordingly, IT IS ORDERED that State Defendants' motion for summary judgment (Doc. 3) is GRANTED.  Defendants Barbara Harris, Thomas Chianelli, and Montana Fish, Wildlife & Parks are DISMISSED from this case.

DATED this 19th day of August, 2015.

Dana L. Christensen, Chief District Judge
United States District Court