IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| ROSS FRATZKE and DEBORA FRATZKE,<br><br>Plaintiffs,<br><br>vs.<br><br>BRYON MILLER; and DOES 1-25.<br><br>Defendants. | CV 14–274–M–DLC<br><br>ORDER |

Before the Court is the motion for summary judgment filed by Defendant Bryon Miller ("Miller"). For the reasons explained below, the Court grants the motion.

## BACKGROUND

This case arises from the prosecution of Plaintiffs Ross and Debora Fratzke ("the Fratzkes") in the Montana Twentieth Judicial District Court on charges of theft by insurance fraud, in violation of Montana Code Annotated § 45-6-301(6), and unlawful possession, shipping, or transportation of game animals, in violation of § 87-3-111. Following the State of Montana's case at trial, the two fish and wildlife charges were dismissed for lack of probable cause. The jury was unable

-1-

to reach a verdict on the insurance fraud charge.  Ultimately, all of the charges against the Fratzkes were dismissed.

Subsequently, they brought this federal suit against multiple Defendants for their roles in the prosecutions.  The Fratzkes' claims include defamation, state law malicious prosecution, malicious prosecution as a violation of 42 U.S.C. § 1983, abuse of process, intentional infliction of emotional distress, and deprivation of their right to privacy under the Montana Constitution.  All Defendants have been dismissed from the case with the exception of Miller.

Miller worked for the Fratzkes at Flat Iron Outfitting and Les Schwab from 2006 to 2009.  He was terminated from Flat Iron Outfitting in December 2009, and then supplied information to the Sanders County Sheriff's Department that the Fratzkes allegedly committed insurance fraud and game violations.  The Fratzkes four claims against Miller—defamation, state law malicious prosecution, abuse of process, and intentional infliction of emotional distress—all stem from Miller's acts in providing alleged false information to the Sanders County Sheriff's Department.

**LEGAL STANDARD**

A party is entitled to summary judgment if it can demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment

as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is warranted where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251 (1986). Only disputes over facts that might affect the outcome of the lawsuit will preclude entry of summary judgment; factual disputes that are irrelevant or unnecessary to the outcome are not considered. *Id.* at 248. In ruling on a motion for summary judgment, a court must view the evidence "in the light most favorable to the opposing party." *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). "[T]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 1863 (quoting *Anderson*, 477 U.S. at 255).

## ANALYSIS

A federal court sitting in diversity applies the substantive law of the forum state to state law claims. *Mason & Dixon Intermodal, Inc. v. Lapmaster Intern. LLC*, 632 F.3d 1056, 1060 (9th Cir. 2011). Thus, the Court analyzes Miller's motion for summary judgment on the Fratzkes' state law claims pursuant to Montana law.

### I. Defamation

In Montana, a plaintiff must bring a claim for defamation within two years.

Mont. Code Ann. § 27-2-204(3). The Fratzkes concede that they failed to bring this claim within the two year statute of limitations. (Doc. 75 at 2.) Therefore, Miller is entitled to summary judgment dismissing the Fratzkes' defamation claim.

## II. Malicious Prosecution

In order to present a cognizable claim of state law malicious prosecution, the plaintiff bears the burden of proving that "(1) a judicial proceeding was commenced against the plaintiff; (2) the defendant was responsible for instigating, prosecuting, or continuing a judicial proceeding; (3) there was a lack of probable cause for the defendant's acts; (4) the defendant was actuated by malice; (5) the judicial proceeding terminated favorably for the plaintiff; and (6) the plaintiff suffered damage." *Spoja v. White*, 317 P.3d 153, 156 (Mont. 2014) (citations and internal quotation marks omitted). "Malicious prosecution claims are not favored by the law and the burden on the plaintiff is heavy." *White v. State ex rel. Mont. State Fund*, 305 P.3d 795, 803 (Mont. 2013) (citations omitted). "When a defendant acts upon a statutory duty and provides information to the proper authorities, who then file criminal charges, that defendant is not liable for 'instigating' criminal proceedings." *White*, 305 P.3d at 804 (citing *Vehrs v. Piquette*, 684 P.2d 476, 478 (Mont. 1984) ("providing information to authorities without more" does not satisfy the instigation element in a malicious prosecution

claim)). If a plaintiff fails to offer proof of any one of the elements of malicious prosecution, the action fails, and summary judgment in favor of the defendant is proper.

Here, there is no dispute that a judicial proceeding was commenced against the Fratzkes. As to the second element, Miller argues it is undisputed that once he provided information to the Sanders County Sheriff Department, he was not the person or entity responsible for bringing the criminal charges against the Fratzkes. Sanders County assigned the case for prosecution to the Assistant Attorney General Barbara Harris ("Harris"), and Harris was the person who investigated the allegations and made the independent prosecutorial decision to pursue criminal charges against the Fratzkes. Thus, from Miller's perspective, there is no dispute that he was not the person responsible for instigating the judicial action. The Fratzkes disagree with Miller, and contend that he is responsible for instigating the criminal prosecutions against the Fratzkes because he was motivated by malice when he reported the alleged false information to the Sanders County Sheriff Department after being fired. (Doc. 75 at 6; 74 at 4.) The Fratzkes concede that "it was the prosecutor that decided to prosecute th[e] case." (Doc. 75 at 6.) Nonetheless, the Fratzkes claim that because the prosecution relied on Miller's alleged false reports, he is liable for malicious prosecution.

Both parties cite to *White v. State ex rel. Mont. State Fund* and *Miller v. Watkins*, 653 P.2d 126 (Mont. 1982), in support of their positions. The Court agrees with the Fratzkes that Miller was under no statutory obligation to report the alleged false information, as the defendants were in *White*. The Court finds that the facts in *Miller* are more applicable to the facts here. In *Miller*, the Montana Supreme Court found that the appellant did instigate the judicial proceedings because he was the sole person responsible for bringing the information to the authorities. 653 P.2d at 130. The Montana Supreme Court focused on the fact that the appellant admitted during trial that he went to the county and informed him about the false crime because he "expected that [the Plaintiff] would be charged with theft." *Id*.

Here, there is no indication from the record that Miller's true intention was to initiate a criminal prosecution against the Fratzkes for insurance fraud. Further, the record shows that he was not the only person who provided law enforcement and the prosecutor with information regarding the Fratzkes alleged insurance fraud and game violations. Thus, the Fratzkes' assertion that "without Defendant Miller's reporting to Deputy Spring a case would never have been initiated" is untrue. (Doc. 75 at 7.) While Miller's information was the first indication of possible insurance fraud and game violations to Sanders County officials, the

record makes clear that Sanders County Sheriff Martin Spring interviewed numerous individuals about the alleged conduct before proceeding with potential charges against the Fratzkes. (Doc. 76-2.)

Specifically, Miller presents evidence proving Sheriff Spring spoke with Steve Krumm of Muley Bluz, a speciality shop for horse tack and rodeo gear, about two items Ross Fratzke had purchased. Mr. Krumm corroborated that pictures of the alleged stolen items Ross Fratzke submitted to the insurance company were in fact the items Mr. Krumm sold to Ross Fratzke. (Doc. 76-2 at 21–22.) The pictures taken by Sheriff Spring indicated that Ross Fratzke still possessed those specific items. Martin also spoke with the Utah Safe Outlet, who corroborated that a 32 inch Vizio HD LCH TV was stolen from their booth at a trade show in Salt Lake City. (Docs. 76-1 at 2; 76-2 at 10, 16–18.) The Fratzkes had this exact television in their possession when the Sanders County authorities initiated a search warrant on their home. (Doc. 76-2 at 20.) Therefore, based on the record, there is no genuine dispute that Miller was not the sole provider of information supporting the criminal prosecution against the Fratzkes. Consequently, the Fratzkes are unable to prove the instigation element of their malicious prosecution claim.

Neither party addresses the probable cause element, but the issue of

probable cause is also without factual dispute. "[P]robable cause is determined under an objective standard on the basis of the facts known to the party initiating the legal action" and "[a] finding of probable cause to instigate civil litigation or a criminal prosecution is based on the totality of the circumstances." *Plouffe v. Montana Dep't of Pub. Health & Human Servs.*, 45 P.3d 10, 15 (Mont. 2002). In reviewing the record, the Court concludes that there was sufficient probable cause for Harris to initiate charges against the Fratzkes. Harris stated under oath that "based on information and belief, that investigative information developed and provided to her . . . demonstrate[d] probable cause to believe that [the Fratzkes] committed the offenses charged." (Doc. 4-2 at 1–2). Miller was not the only source of information within the investigative report, and Harris made her decision to prosecute based only on the investigative file and applicable law. Further, no evidence suggests that Miller specifically gave information to Sanders County officials in an attempt to cause the prosecution against the Fratzkes. Thus, there is no dispute that there was sufficient probable cause to prosecute the Fratzkes, and this element of malicious prosecution is also not established.

Next, under the fourth element of malice, the record does support a factual dispute as to whether Miller was motivated by malice when he informed the Sanders County officials about the Fratzkes. It is possible a reasonable jury could

determine that Miller was actuated by malice, since he was terminated from the Fratzkes' Flat Iron Outfitting business just before he supplied information to Sanders County officials.

The Fratzkes must also establish that the judicial proceeding terminated in their favor, which is not entirely certain here. The Ninth Circuit has not ruled on the issue of whether a hung jury constitutes a favorable termination for the plaintiff. However, other courts, including the Second Circuit, have ruled that when the proceeding ends in a hung jury, the plaintiff's guilt is still left open and the end result is not considered a per se "favorable outcome" for the plaintiff. *See, e.g.*, *Singleton v. Cty. of New York*, 632 F.2d 185, 195 (2d Cir. 1980) (when a hung jury results in an "adjournment in contemplation of dismissal" it does not constitute termination in favor of the plaintiff, since such a dismissal "leaves open the question of the accused's guilt"); *Haefner v. Lancaster Cty.*, 520 F. Supp. 131, 133 (E.D. Pa. 1981), *aff'd sub nom.*, *Haefner v. Cty. of Lancaster, Pa*, 709 F.2d 1492 (3d Cir. 1983) ("An indecisive disposition, such as a hung jury, will not suffice" because there is no "proof that the prior state criminal prosecution ended in a manner inconsistent with guilt."). Under Montana law, the general view of a hung jury mistrial has been that it is essentially a nullity and that the subsequent retrial determines a defendant's guilt or innocence. *State v. Herron*, 169 Mont.

193, 197, 545 P.2d 678, 681 (1976) (the United States Constitution and Montana Constitution do "not prohibit retrial for the same offense if the first trial results in a hung jury"). Therefore, because the state proceeding ended in an hung jury, it is unlikely under Montana law that the Fratzkes can prove the end result terminated in their favor.

Regardless of how Montana law would determine the issue of a hung jury in regards to the Fratzkes innocence, the Fratzkes have not met their heavy burden to prove the majority of the remaining elements of their malicious prosecution claim against Miller. Therefore, Miller is entitled to summary judgment on Count II.

### III. Abuse of Process

To prevail on an abuse of process claim, a plaintiff must show (1) an ulterior purpose, (2) a willful act in the use of the process not proper in the regular conduct of the proceeding. *Brault v. Smith*, 679 P.2d 236, 240 (Mont. 1984). The plaintiff must show that there was an attempt to use a legal process to "coerce the [plaintiff] to do some collateral thing which he could not be legally and regularly compelled to do." *Brault*, 679 P.2d at 240.

The record in this matter is devoid of any facts establishing that Miller utilized any legal process against the Fratzkes beyond its intended purpose. Informing authorities of alleged fraudulent conduct does not constitute abuse of

process. Therefore, Miller is entitled to summary judgment on this claim.

**IV.   Intentional Infliction of Emotional Distress ("IIED")**

Under Montana law, "an independent cause of action for intentional infliction of emotional distress will arise under circumstances where serious or severe emotional distress to the plaintiff was the reasonably foreseeable consequence of the defendant's intentional act or omission." *Sacco v. High Country Indep. Press, Inc.*, 896 P.2d 411, 428 (Mont. 1995). "[D]amages for emotional distress are compensatory and, therefore, the focus should be on the reasonable foreseeability that plaintiff's serious or severe emotional distress was the consequence of the defendant's act or omission." *Id*. "The distress must be reasonable and justified under the circumstances, and there is no liability where the plaintiff has suffered exaggerated and unreasonable emotional distress, unless it results from a peculiar susceptibility to such distress of which the [defendant] had knowledge." *Id*. at 426 (citations omitted). "It is for the court to determine whether on the evidence severe [serious] emotional distress can be found; it is for the jury to determine whether, on the evidence, it has in fact existed." *Feller v. First Interstate Bancsystem, Inc.*, 299 P.3d 338, 346 (Mont. 2013) (citations omitted). The Montana Supreme Court has declined "to hold that a criminal trial, standing alone, causes emotional distress 'so severe that no reasonable person

could be expected to endure it.'" *White*, 305 P.3d at 806 (citing *Sacco*, 896 P.2d at 423).

The Fratzkes' IIED claim fails because Ross Fratzke's alleged PTSD is not attributable to Miller and is not reasonable and foreseeable under the circumstances. Ross Fratzke claims that he suffers from PTSD as a result of the criminal prosecution, and provides a report from his treatment provider, Philip H. Bornstein, Ph.D., to that effect. Dr. Bornstein's report concludes that his current PTSD is "clearly related to the Sheriff's Department raid, his legal entanglements, seizures, and life-flight experiences." (Doc. 74-2 at 11.) The Montana Supreme Court has found that "where this is a physical manifestation of bodily harm resulting from emotional distress, such as PTSD, this bodily harm is sufficient evidence that the emotional distress suffered by the plaintiff is genuine and severe." *Henricksen v. State*, 84 P.3d 38, 55 (Mont. 2004). Therefore, Ross Fratzke argues that Dr. Bornstein's report satisfies the prima facie showing of severe emotional distress.

Miller contends that Ross Fratzke has not put forth sufficient evidence to prove his IIED claim, because Dr. Bornstein's report does not establish that the

PTSD was caused by Miller.[1] (Doc. 76 at 6.) The Court agrees. Expert medical testimony must exhibit a reasonable degree of medical certainty. *Estate of Willson v. Addison*, 258 P.3d 410, 415 (Mont. 2011). Here, the Fratzkes have failed to produce evidence that would create a genuine issue of material fact regarding causation; that is, that Miller caused Ross Fratzke's PTSD. Dr. Bornstein's report does not attribute Ross Fratzke's psychological problems to Miller. According to Dr. Bornstein, it was the subsequent investigation by law enforcement and prosecution that caused Ross Fratzke's problems. Therefore, the Fratzkes have failed to meet their evidentiary burden on summary judgment regarding their IIED claim.

Furthermore, as this Court has already found in this case, it is a stretch to conclude that Ross Fratzke's PTSD was caused by the actions of the Defendants in this case—the Fratzkes own and operate a hunting lodge and outfitting service, and it is highly foreseeable that, from time to time, they would interface with Montana Fish, Wildlife & Parks personnel and perhaps even be investigated or audited in some fashion. (Doc. 60 at 22.) More importantly, it was the Fratzkes

---

[1] Miller also argues that Dr. Bornstein's report is inadmissible because it is not supported by an affidavit. The Court need not evaluate that contention here because it finds, even assuming the report is admissible, that the Fratzkes have failed to carry their burden to overcome summary judgment on their IIED claim.

own insurance claim that contributed to the investigation. Any reasonable person in the Fratzkes position, who submits an insurance claim for over $20,000 of missing items related to their outfitting business, would expect the insurance claim to be thoroughly investigated. In any event, the Fratzkes cannot prove that Ross Fratzke's PTSD was caused by Miller, who did not make the decisions to either investigate or prosecute in this case.

Based on the foregoing, the Court grants Miller's motion for summary judgment on Counts I, II, IV, and VI of the Fratzkes' First Amended Complaint.

Accordingly, IT IS ORDERED that Miller's motion for summary judgment (Doc. 71) is GRANTED. Defendant Miller is DISMISSED from this case.

IT IS FURTHER ORDERED that this case is CLOSED.

DATED this 17th day of October, 2016.

_____
Dana L. Christensen, Chief District Judge
United States District Court